Our fifth case of the day is Smith v. United States. Mr. Gleickstein. Thank you, Your Honor. And may it please the Court, my name is Jed Gleickstein and I'm pro bono counsel for plaintiff appellant in this case, Mr. Cedric Smith. The District Court erred in this case when it granted summary judgment to the defendant despite a genuine issue as to why Mr. Smith fell off a stool and struck his head while he was in the custody of the United States Marshals Service in January 2013.  Mr. Smith testified clearly and unequivocally that he fell because the stool that was provided to him by the Marshals Service was broken. If that testimony is credited, and it has to be credited at this stage in the proceedings, then Illinois law, like the law in many other states, provides that Mr. Smith is entitled to recover for his injuries under the doctrine of res ipsa loquitur. You know, detainees and inmates did use this chair regularly. It is possible that some other inmate worked some mischief on the chair. Inmates are certainly known to take things apart in order to make weapons. How do we factor that possibility into the res ipsa loquitur analysis? Well, I think, Judge Rovner, you're exactly right. It's a possibility, but mere possibilities or hypotheticals, I think, have never been held sufficient to rebut, as a matter of law, the res ipsa inference. So in Illinois, the defendant is permitted to introduce evidence that it was not negligent or that some third party was negligent, even where res ipsa applies. So I think it's quite unlikely in these circumstances that an inmate in a cell with permission of the Marshal Service and with his attorney on the other side of a wire screen would be likely to tamper with or disable this stool in a way that nobody would notice. Again, it's possible. It's an argument I think the government can make, but Illinois courts have held that ultimately I think that determination goes to the trier of fact. That's the Metz case from 1965 and many other cases besides. What do we know about how the seat of the stool was connected to the arm? Was it originally bolted together? Well Mr. Smith's testimony is that after he fell, he looked up at the seat where it connected to the arm and noticed that it was missing bolts and that, in fact, it wobbled when he put weight on it. So I think it's a natural inference to say that there were bolts or there should have been bolts, but they weren't there on the day that he fell. Now Mr. Smith also testified that he returned to the interview room several months later and noticed that the stool at that point had been welded. The government disputes that. That's a genuine issue that I think has to be resolved at trial. So for purposes of summary judgment, there were no bolts. The stool was wobbly. Several months later, the stool had been welded where it had not been before. One more and I'll let you alone, but I am wondering, do we know if the room was monitored by video or inmates patted down after they leave a room? I believe that there was testimony that it was not. I mean, it was used for inmate or pretrial detainee attorney conversations. So I think it was not, but I don't know the answer to that for sure. Again, I think that ultimately just goes to the reasonability of the inference or the strength of the inference. I don't think as a matter of law it undermines the inference. Ultimately, I think it's important to realize that both under Illinois law and under federal law, which governs the summary judgment procedure, Mr. Smith doesn't have to prove beyond the shadow of a doubt that race ipsa would apply. He just has to introduce competent evidence from which a finder of fact could, as a matter of law, make the inference. And I think he's done that. First of all, it seems to me that it's uncontroversial that the government had control over this tool for purposes of the doctrine. The government exercised vastly more control than other actors do over similar instrumentalities in cases where race ipsa is found to apply. What is race ipsa? The key word in that phrase is loquitur. Race ipsa is just the thing itself. You're correct, Your Honor. You're correct. We're saving time here. Not getting the Latin right. If we're going to use Latin phrases, get the Latin right. I took Spanish in high school, not Latin, so I apologize, Your Honor. But in other cases where the race ipsa loquitur inference has been held to apply, the level of control that's required is far, far less. Ultimately, this, as the Illinois Supreme Court has said, is really a question of duty. Was the defendant under a duty to take precautions to prevent this kind of accident from occurring? Here it's conceded that the government was under a duty to the plaintiff, and in fact, government purported to inspect the room for that purpose. So I think that element is satisfied in a very straightforward way. Second, I think it's the case that this kind of accident is not the sort that ordinarily occurs without negligence. Again, the question is really whether it's ordinarily the case, not whether it's always the case. And that's true as a matter of common sense. It's also true as a matter of law. It's true in the Robinson case, which was cited with approval by the Illinois Supreme Court, which has never been disputed as good law by the defendant in this case or any other case of which I'm aware and which is consistent with a vast body of law outside of Illinois. Ultimately, I think unless the court has any further questions, I'm happy to answer them, but we'll stand on the briefs and we'd ask that you reverse the judgment and remand this case for a trial. Thank you, Mr. Wickstein. Ms. Klein. May it please the court, I am Kimberly Klein, representing the United States, the appellee in this matter. I'm going to start you right out because I've been trying to figure out how this case is materially different from the Robinson case. Mr. Smith sat down in a chair that the defendant supplied to him. By his account, it tipped him onto the floor. Given that this was, you know, the government's stool and the government controlled access to the stool, isn't the natural inference, however rebuttable it might be, that the stool failed due to the government's negligence? Isn't that kind of natural? That is one natural inference. Isn't that loquitur? That is one natural inference, Your Honor. In Robinson, it was undisputed that the chair had failed. The rivet was still intact. The slot that the rivet intersected with was still intact. Well, our plaintiff testified that the stool failed. He did. Now, he may not have a memory of this. He might have suffered a stroke. He may be lying, but he testified that the stool failed. He did testify that the stool failed, and we have to accept that for purposes of summary judgment. And the district judge dismissed his claim because the judge said, well, he might be wrong. Well, goodness gracious, that's not what's supposed to happen in the federal system. In order to apply res ipsa loquitur, the plaintiff would have to prove that the stool was under the control of the defendant and that the breaking of the stool, the fall from the broken stool. Yeah, well, look. It's a stool in a prison. If there isn't a stool under the control of the United States in the world, right, the stool in the prison is the thing most under control. If you can't use the doctrine of res ipsa loquitur for a stool locked up in a prison, where would you use it? Your Honor, my contention is really with the second part of the inquiry, and that is that the breaking of the stool, the fall from the stool would not likely occur in the absence of negligence. Well, the stool actually wasn't in a prison. It was in a district court and a conference room outside, but it was under the control of the marshal service. It was in a conference room within the marshal services area of the courthouse, yes. And to enter the room, you did have to gain access through the marshals, absolutely. Are inmates patted down when they exit the conference room? I do not believe that information is in the record, Judge Rovner. You asked another question about whether the conference room was monitored by video or otherwise, and the answer to that, I believe, is a definitive no. It's for confidential communications, and as Attorney Tassav said in his deposition, he certainly hoped not, because he's having confidential communications in that location. You also asked how the seat was connected, and unfortunately, the record is woefully deficient in explaining that in this case. Mr. Smith testified there were no bolts. When he looked up, he saw no bolts. He doesn't ever establish that there should have been bolts. Oh. Just as if it has an arm. It is, and unfortunately, there is no picture. A picture is worth a thousand words, and unfortunately, that is not in our record to explain to you how this stool is actually attached. It swings against the wall and then swings out. It's on a hinge. It's on a hinge with a metal pole. The seat sits on top of the metal pole, swings away from the wall to allow handicapped access, is how it was explained by the marshals. Yes. So, you also asked the question about, I believe, counsel said that all he needs to do is provide competent evidence from which a jury could make the inference that res ipsa should apply. Oh, dear. Heavens die hard. However, if all it takes is some evidence, then doesn't the exceptions follow the rule? And res ipsa would apply at any time if you don't have to show that the stool would more likely not have failed without negligence by the defendants who testified that they performed inspections, who testified that inmates have used the stool for years, since 2005 when it was installed, without any incident but for this case. They need a new stool. Inmates continue to use that stool to this day. If there are no further questions, I ask you to affirm the district court. Mm-hmm. Thank you. Thank you, Ms. Klein. Anything further? Mr. Glickstein? Just very briefly, Your Honor. I think the government's argument just underscores that there are fact issues here that have to be decided by the trier of fact and can't be decided on summary judgment. And we would disagree that sort of any level, you know, it's not that the mere possibility that the res ipsa loquitur inference could apply is enough to get to summary judgment. But the Robinson case holds as a matter of law that these facts, if taken in the light most favorable to Mr. Smith, are sufficient. And the Nickel and Napoli cases at the government sites show that there are indeed cases where res ipsa loquitur is not enough. But that's not this case. Mr. Smith has met his burden at this stage of the proceedings. So again, we just ask that the court reverse the judgment below and remand this case for trial. Thank you. Thank you, counsel. The case is taken under advisement.